# IRON-SHIP BUILDING WORKS v. D. T. NUTTALL.

ERROR TO THE COURT OF COMMON PLEAS OF DELAWARE COUNTY.

Argued February 9, 1888—Decided March 5, 1888.

In an action by a servant, a mechanic, to recover from an employer for personal injuries received from a circular saw about which he was employed, the negligence charged against the defendant was the failure, (1) to inform the plaintiff that the circular saw was dangerous, and (2) to provide it with an attachment claimed to be effective in diminishing the danger: *Held,*

1. That the omission of such a warning to a mechanic, under the circumstances of the case, was not a failure in duty on the part of the employer.
2. That, as the testimony showed that the attachment referred to was not in general use and that there was no general agreement among millowners and sawyers that it was desirable or useful, it was error to leave to the jury any question of negligence based on the omission to provide it.

Before PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.; GORDON, C. J., and TRUNKEY, J., absent.

No. 169 January Term 1887, Sup. Ct.; court below, No. 72 June Term, 1885, C. P.

On April 24, 1885, David T. Nuttall brought an action in case for negligence against the Delaware River Iron-Ship Building & Engine Works, to recover damages for personal injuries received.

At the trial on September 27, 1886, the facts appeared, in substance, that the plaintiff, who for some time had been em-

ployed as a carpenter or bench hand in the.defendant company's shop, in order to expedite the getting out of a lot of berth-fronts, the material for which was to be cut up with a circular saw, was instructed to assist in the work by removing the material from the left side to the right of the machine, so as to be within easy reach of the sawyer, and, while passing behind the saw in this occupation, a loose piece of wood was caught in the teeth and, thrown backwards, struck the plaintiff in the eye, causing a total loss thereof.

Evidence was introduced on the part of the plaintiff from which it was contended that the great danger connected with the circular saw in use, was its liability to catch loose pieces of wood and to hurl them with great velocity; that a "guard," as it was called in the testimony, materially lessened this danger by spreading and holding apart wood that is being sawed, and preventing loose strips from getting against the teeth on the back side; and that there was negligence on the part of the defendant company in not using such a "guard" with its saw and in giving the plaintiff no warning of the danger.

The court, CLAYTON, J., charged the jury in part as follows:

It is a proposition of law that the owner or employer must furnish tools and machinery reasonably safe and adequate for the purpose of performing the work required of them. He is not required to adopt every new idea of safety; he is not even required to adopt the very best and safest machinery, for that would break up almost every establishment in the country. Everywhere new improvements are constantly being made; new safeguards invented. When they become generally used, when they are generally adopted, then it is the duty of the employer to use them; but until the adoption of the machine becomes common, until the new safeguards become general, until they are in general use to a certain extent, so general as to convey notice to the man using such a machine, they are not required to adopt every new safeguard. Now, you will apply the evidence in the case to these principles of law. Remember, that while the law requires an employer to furnish machinery reasonably safe and adequate for the work to be performed, the law does not require him to adopt every supposed safeguard; it does

not require him to employ the safest machinery or the best. If the law were so unreasonable as to require that, one half of the mills would shut up, because the old machinery has not the improvements that are upon the new. I therefore say to you, that if you find from the evidence that this saw was reasonably safe and adequate for the work it had to do, considering the work it had to do; that is, if it was the kind of saw that was generally used in large establishments in this country, then the plaintiff cannot recover. He took the risk of his employment when he went into that establishment; his right to recover depends upon a very narrow and delicate point, which I will presently state to you, which, if you find it in his favor, will entitle him to recover. . . . .

But now we come, perhaps, to the point on which he may recover. He tells you he is a carpenter; that he went to this yard to find employment; that he was asked what he could do, and that he told the foreman what he could do. He says he was asked if he could work at the bench, and that he said he was not a first-class bench hand, but that he could work at the bench. He was then told to bring his chest and tools the next day and go to work. Nothing was said about sawing. Sawing appears to be a specialty in itself. He says that his understanding was that work at the bench was what he was to do; and, that if he had been asked if he could saw, he would have said, at once, that he had never done any work of that kind. He says that he worked around the shop at the bench for a considerable time, and that he never particularly noticed the saw; that he was directed, upon a certain occasion, to report to Mr. Mattis; he did so, and Mr. Mattis told him the work he had to do was around the saw, and he went and did the work. Now, while he was engaged in performing that work according to orders, he was injured. If you find that he had not yet noticed the saw, and that he reasonably thought it had a guard on it; then, if you also find that the employment he was engaged in doing was not his original employment, then still, undertaking to do the work around the saw, after he had seen it, was a new employment, so far as it went; and, having undertaken to do that work, without objection, he took upon himself all the risks of the work, unless there was some defect in the saw, or unless it was not adequately pro-

tected for the work he had to do. But, if he noticed and examined the saw and perceived the danger, and still undertook to do the work, then he could not recover. But if he did not have an opportunity to see the saw, or if he did notice it and saw that it had no guard on it and then refused to go on, he could recover. Do you understand? [I say, if, when the plaintiff went to work around that saw, he had reason to suppose it had the guard on it, and that he was incurring no danger in working behind it, then, if the machine was not properly protected so as to guard him against that kind of injury, then, perhaps, he may recover; but, if you find that he knew the kind of machine that it was, if you find that he saw it and understood the danger before he undertook the work, and that he was not employed generally, to do work in the shop, but that he was employed as a bench hand, and that this was a new order which he obeyed under the mistaken notion that there was no danger in it, he can, perhaps, recover. And that is the only possible ground upon which he can recover. There is no other theory that can be adopted in the case that will entitle him to recover in this case, than the one I have stated. In order that you may not misunderstand me, let me repeat it again. It will be necessary for you to find that he was not employed as a general hand, but that he was employed to only work at the bench; you must find that, first, before you can bring in a verdict in his favor. He cannot recover, unless you find that. If you find that in his favor, you must then find that this was a special employment to work around the saw; and, if you find that he did not have an opportunity to notice the saw so as to know the danger he was in, and that he was not aware that it had no guard upon it, then, I say, he may possibly recover. But, if he had an opportunity to see the danger, to know that when he was passing by the saw he was liable to be struck, or if he ought to have known that, he cannot recover; and it is only upon the principle that the employer did not furnish a reasonably safe machine for him to work around that he has any case.][1] It was reasonably safe for the employer, and it was reasonably safe for the man that was working upon it, but the question is, was it reasonably safe for a man who was not employed to work on it but around it; and, if you find from the testimony, that this man was not em-

Charge of Court below.

ployed to do general work in the shop, but only to work at the bench, and that this was a special employment, and he was not properly informed of the danger he was incurring, that is some evidence of wrongful conduct upon the part of the defendants, the employers. . . . .

You will remember the notion upon the part of the plaintiff, that he was employed as a bench hand, and not to do general work around the shop; that he was specially directed to do the work around the saw, of which he knew nothing. He was not informed of the danger of the implement. He alleges that the saw had not upon it the guards necessary to protect him. I have said all I care to say upon that subject; I do not think there is much in it. While that guard is, undoubtedly, a protection, I cannot see that the law requires them to use it; unless it is used generally in the business they were not bound to use it. There may be something in it, but it is, undoubtedly, not entitled to as much weight as the plaintiff seems to think. There are a great many inconveniences connected with that guard. According to the testimony, you cannot make curves as easy with it as without. You have to adjust it and readjust it whenever you change the saws. The saws are of different thicknesses and grades; and, according to the evidence, it is not usual to use guards in large sawing establishments, that they are not in general use. Now, if notice had been brought home to the defendants here, if this plaintiff had refused to work around that machine without the guard on it, then he would be in condition to recover had they insisted upon his working there. But there is no evidence that the establishment had any notice, at all, of this little invention, because it does not appear to be generally used, and in some shops where it has been tried its use has been abandoned. I say to you, therefore, that while you may consider the absence of the guard, it is not as important as the plaintiff seems to think it is. . . . .

Circular saws are known to be dangerous, particularly by men who work around them; and you have the fact that this is the second accident that has ever happened. . . . .

The plaintiff's points [inter alia]:

3. If the jury believe that a circular saw operated as this

one is, is a dangerous machine, it was the duty of the defendant to adopt such precautions as might reasonably prevent damage or injury to his employees; and, if the jury find that the defendant did not adopt and maintain such precautions, the defendant was negligent, and the plaintiff is entitled to recover.

Answer: "Dangerous machine,"—There is no doubt about that. I affirm that. I have given you the illustration of the man who sends a professional blaster to dig his well, and the one who sends an unskilled farm hand or a boy to do it. If he sends an unskilled farm boy to do it, he must look out. He must inform him of the danger and have guards to protect him. If he is a skilful man, he is not bound to do it. So, as to the defendants here. If their men were employed to do general work in the shop, here, and it is hardly necessary for me to repeat that again, and this man did not know the dangerous position in which he was placed, then he ought to have been informed. That is the only point, as I have stated several times before, upon which he can recover.[4]

4. If the jury find that the defendant did not keep and maintain this saw in such condition as to be reasonably and sufficiently safe, even if the carelessness of a co-employee contributed to the injury, yet, the defendant being negligent, the plaintiff is entitled to recover.

Answer: As a proposition of law that is affirmed.[5]

6. If the jury believe that the plaintiff was employed as a bench hand and that the work at this saw was out of the usual course of his duties, and that upon the morning of the injury he was under the orders and control of Ross and Mattis, and the injury was the result of the negligence of Ross or Mattis in ordering him to work at this place, the plaintiff is entitled to recover.

Answer: "Course of his duties." That is the point upon which I have already expressed my opinion.

This is rather a complicated point and requires a very careful answer. If you find that the plaintiff was employed to do general work in the shop and understood that, then this point is not applicable to the case. If you find that he was not, then, as I before stated, if he was directed to do some work with which he was not acquainted, and undertook to do it, he

was entitled to be fully informed of the danger. It is just what I have stated to you several times; and if he was not informed of the danger, and did not undertake to do that kind of work, then he can recover. I cannot see that the negligence of Mr. Ross or Mattis has anything to do with the case if you find he was not employed to do that work, because it was Mr. Ross who employed him; he was the foreman, and, virtually, if he was not employed to do general work, then, when he was directed to do this work, as I said before, that would be a new employment, and if he undertook to do it without objection, the presumption is that he knew the work he was undertaking to do and the danger he incurred. If he objected, then he would be in a good condition—still he was entitled to have reasonable information of the work he was to do, if you find he was not acquainted with the work and did not know what the danger was.[6]

The defendant's points [inter alia]:

11. If the jury believe that the plaintiff in his work in and about the machine, failed to act with due prudence and care in approaching or passing back of the said machine, then he was guilty of contributory negligence and cannot recover.

Answer: There is no evidence that he did show a want of care that I remember. He did what he was asked to do. He carried the wood where he was asked to carry it. Of course he must keep his eyes open in working around a dangerous machine. He ought to be on his guard; and if you find he was not, he cannot recover, no matter how negligent the other side was. I see no evidence of it in this case, but that is for you. If you find it, I leave it for you to say. I do not think the question of contributory negligence arises in the case, and I do not remember any evidence of contributory negligence in the plaintiff. He carried the wood just where he was told to go; he had to go just where he went; and it is not to be supposed he knew just where the stick was going to fly, so that he could dodge it.[2]

13. On the whole case, the verdict should be for the defendant.

Answer: I decline to so charge you. I leave that to you. It is for you to say under the law as laid down by the court,

whether he is entitled to recover or what he is entitled to recover. That is entirely for you; I leave it entirely to your good judgment and good common sense.[3]

The verdict of the jury was in favor of the plaintiff for $1,300, and judgment being entered thereon, the defendant took this writ, assigning for error:

1. The part of the charge embraced in [ ][1]

2-3. The answers to the defendant's points.[2 3]

4-6. The answers to the plaintiff's points.[4 to 6]

*Mr. William Ward*, for the plaintiff in error:

1. Nowhere in any part of the testimony was there the slightest suggestion to warrant the idea that the plaintiff supposed this saw had a guard on it, or that he was incurring no danger in working behind it. In the part of the charge assigned as error, these two considerations are given an undue prominence and importance.

2. In the defendant's eleventh point was presented an undoubted principle of law, and he was entitled to a specific answer instead of an argumentative reply.

3. It is submitted that the court below should have given a binding instruction against the plaintiff. An employer does not guarantee the absolute safety of his employee. The latter is assumed to have notice of all patent risks incident to his employment: Sykes v. Packer, 99 Pa. 465; Wannamaker v. Burke, 111 Pa. 423; Grimont v. Hartman, 17 W. N. 252; Marsden v. Haigh, 14 W. N. 526; Rummell v. Dilworth, 111 Pa. 343.

4. The answer to the plaintiff's fourth point announces the doctrine that if this saw was not in proper condition, then the plaintiff would be entitled to recover, even if the carelessness and negligence of a co-employee contributed to the accident. It is submitted that this is not the rule of the law: Johnson v. Bruner, 61 Pa. 58.

*Mr. Isaac Johnson* (with him *Mr. V. Gilpin Robinson*), for the defendant in error:

1. Though it is undoubtedly the rule that the servant is deemed to have assumed the natural and reasonable risks of

his employment, yet it is also the rule that he is not presumed to take into account a risk not included in his employment, and which therefore he had no reason to anticipate: Frost v. Railroad Co., 11 Amer. L. Reg., N. S., 101; Shear & Redf. on Neg., § 109; Rummel v. Dilworth, 111 Pa. 343. Therefore the character of the plaintiff's employment was an important question and proper for the consideration of the jury.

2. An employer cannot operate a machine which he knows to be dangerous, send persons to work about it who have no knowledge of its dangerous character, and be free from responsibility: Wellington v. Oil Co., 10 Mass. 64; Barney v. Burstenbinder, 64 Barb. 213. Whether the plaintiff knew or ought to have known of the danger, and whether the defendant exercised due and reasonable care in warning him, were certainly questions for the jury: P. W. & B. R. Co. v. Keenan, 103 Pa. 124; Crissey v. Railway Co., 75 Pa. 85; McCully v. Clarke, 40 Pa. 406. The machine being hazardous, the law imposed upon the defendant the highest degree of care: F. & B. Turnpike Co. v. Railroad Co., 54 Pa., 345; L. & B. R. Co. v. Doak, 52 Pa. 379; McCully v. Clark, 40 Pa. 406.

3. The answer to the plaintiff's fourth point was correct. When an injury is occasioned partly by the negligence of the master and partly by that of a fellow servant, an action lies against the master: Paulimer v. Railway Co., 34 N. J. L. 151; Cayzer v. Taylor, 10 Gray 274. And when an employer leaves everything in the hands of a middle man, reserving to himself no direction, the middle man's negligence is the negligence of the master: Mullan v. Steamship Co., 78 Pa. 32; Frost v. Railroad Co., 11 Amer. L. R., N. S., 101.

OPINION, MR. JUSTICE WILLIAMS:

The defendant in error, who was plaintiff below, was in the employment of the ship building and engine works as a carpenter. While so employed he was requested on the day of the accident to assist at the circular saw, by carrying the lumber that was to be cut up preparatory to slitting, to the right of the sawyer where it could be easily reached by him. He had carried thirty or forty pieces and was passing around with another when a stick that was upon the table got behind the saw and was caught by it and thrown violently backward,

hitting Nuttall and destroying one eye. This suit was brought to recover damages for the injury so sustained. There is no allegation that the sawyer was not a competent and careful man, nor that the circular saw was not of the pattern and quality in ordinary use, and at the time in good repair. The negligence which the plaintiff imputes to the defendant and for which a recovery was sought and allowed in the court below, is the failure to inform the plaintiff when he was sent to carry the lumber, that a circular saw was a dangerous machine, and the failure to provide the saw with an attachment called a "spreader." As to the first of these, it must be remembered that the work Nuttall was asked to do was simply that of a bearer of burdens; work which is done by cheap and unskilled labor. He was a mechanic and had for weeks been working in the same room in which this saw was operated. All that could have been told him by way of warning was, that there was a possibility of injury from a flying stick, but that during many years no such accident had happened in the defendant's works. That the omission of such a warning to a mechanic under the circumstances of this case, was a failure in duty on the part of the employer is simply preposterous. There is risk and liability to accident in all employments, but the law does not require an employer to protect his employees against the possibility of an accident. He is bound to provide suitable machinery and implements for their use, see that they are in reasonable order, and that the usual precautions against accident are taken. The possibility of accident which lies beyond, is a risk which every mechanic and every laborer takes and must take as incidental to every form of activity.

As to the failure to provide a spreader, the case of the plaintiff is, if possible, more clearly without merit. The testimony shows, that such an attachment is not in general use, and that there is no general agreement among mill owners or practical sawyers that it is a desirable or a useful attachment. It is not enough that some persons regard it as a valuable safeguard. The test is general use. Tried by this test, the saw of the defendant is such an one as the company had a right to use, because it is such as is commonly used by mill owners; and it was error to leave to the jury any question of negligence based on the failure to provide a spreader.

The first, third, fourth, fifth, and sixth assignments of error are sustained.

The judgment is reversed.