## Lewis C. Nuss *v.* Edwin Rafsnyder, Appellant.

*Negligence —Master and servant—Risk of employment.*

When an employee after having the opportunity of becoming acquainted with the risks of his situation, accepts them, he cannot complain if subsequently injured by such exposure. By contracting for the performance of hazardous duties, he assumes such risks as are incident to their discharge from causes open and obvious, the dangerous character of which causes he has had opportunity to ascertain.

In an action by a workman against the owner of a building to recover damages for personal injuries alleged to have been caused by a defective scaffold, it appeared that plaintiff knew the scaffold differed in construction from other scaffolds on which he had worked. He worked on it with a fellow workman on a Saturday, and men observed that it appeared loose and it rocked up and down. Plaintiff's fellow workman complained to the defendant of the condition of the scaffold, and the defendant said in plaintiff's presence that he was sorry, but made no promise to repair the scaffold. On the following Monday plaintiff resumed work on the scaffold, noticing at the time that there had been no change in its condition since he left it on Saturday. While the plaintiff was at work the scaffold broke, and plaintiff was injured. *Held,* that the plaintiff was guilty of contributory negligence, and not entitled to recover.

Argued April 8, 1896. Appeal, No. 239, Jan. T., 1896, by defendant, from judgment of C. P. No. 4, Phila. Co., March T., 1894, No. 207, on verdict for plaintiff. Before STERRETT, C. J., GREEN, McCOLLUM, DEAN and FELL, JJ. Reversed.

Trespass for personal injuries. Before WILLSON, J.

At the trial it appeared that defendant was the owner of real estate in Philadelphia, and was erecting thereon a number of three story houses. The American Cornice Company had a contract with the defendant to construct the cornices on the

buildings, the defendant agreeing to furnish the scaffolding necessary for the work. The plaintiff and one Krimmel were employed upon the scaffold by the Cornice Company. The scaffold broke on Monday, June 18, 1894, and plaintiff was injured. The circumstances connected with the accident are stated in the opinion of the Supreme Court.

The court charged in part as follows:

[Now the defendant undoubtedly, under the evidence in this case, was bound to provide a suitable platform or scaffolding at this place, so that the workmen employed in the putting up of this cornice could work there safely. He assumed that duty under the contract. He undertook it, even if he did not assume it under the contract. He did construct a scaffolding for that purpose. He was therefore bound to construct it properly, so that it could be safely used in the ordinary way.] [1]

[If, in point of fact, this scaffolding was built without any support to the heels of the board, called ledger boards, and otherwise those ledger boards were not fastened so as to hold the probable weight of people working on them, to do the work which the plaintiff was assisting in doing, and the scaffolding was not so weak and tremulous as to have shown the plaintiff that he ought not to stay there, in that case the defendant was at fault, and he was seriously at fault, and it would be a perfectly proper thing to make him pay for the consequence, according to a reasonable standard.] [2]

Defendant's points and answers thereto were as follows:

1. Under all the evidence in this case, the verdict must be for the defendant. *Answer:* Refused. [3]

2. If the scaffold was constructed as the plaintiff states, without uprights inside the room to support the ledger boards, and the plaintiff knew the fact when he went on it on Monday, the verdict must be for the defendant. *Answer:* Refused. [4]

Verdict and judgment for plaintiff for $2,000. Defendant appealed.

*Errors assigned* were (1–4) above instructions, quoting them.

· *Leoni Melick*, with him *Sheldon Potter*, for appellants, cited: Ardesco Oil Co. v. Gilson, 63 Pa. 150 ; Walton v. Hotel Co.,

160 Pa. 5; Mansfield Coal & Coke Co. v. McEnery, 91 Pa. 186; Sykes v. Parker, 99 Pa. 467; Rumsey v. R. R., 151 Pa. 74; Blackmore v. R. R., 8 El. & Bl. 1035; Curtin v. Somerset, 140 Pa. 77; Congregation v. Smith, 163 Pa. 561; Winterbottom v. Wright, 10 M. & W. 115.

*Lincoln L. Eyre,* for appellee, cited: Oak Ridge Coal Co. v. Reed, 5 W. N. C. 3; Brownfield v. Hughes, 128 Pa. 194; Coughtry v. Glove Woolen Co., 56 N. Y. 124; King v. N. Y. Central, 66 N. Y. 181; Pottstown Iron Co. v. Fanning, 114 Pa. 234; 14 Am. & Eng. Ency. of Law, 837, 845; Cougle v. McKee, 151 Pa. 602; Fitzpatrick v. Riley, 163 Pa. 65; Fritz v. Jenner, 166 Pa. 292; Tissue v. R. R., 112 Pa. 91; R. R. v. Keenan, 103 Pa. 124; Murphy v. Crossan, 98 Pa. 495; Patterson v. R. R., 76 Pa. 389; Madara v. Pottsville Iron & Steel Co., 160 Pa. 109; Lee v. Electric L. H. & P. Co., 140 Pa. 618.

OPINION BY MR. JUSTICE MCCOLLUM, November 11, 1896:

It was the duty of the defendant to erect a suitable scaffold on which the plaintiff could properly and safely perform the work he was sent to do, and the first question to be considered in the case is whether this duty was discharged. The plaintiff submitted evidence tending to show that it was not, and that the neglect to discharge it was the cause of his fall. A part of this evidence was descriptive of the manner in which scaffolds were usually constructed for the performance of such work as the plaintiff was required to do and was to the effect that scaffolds so constructed were safe. It was also to the effect that a scaffold constructed as the plaintiff and his witnesses testified the one in question was, was unsafe. This branch of the plaintiff's contention was answered by the defendant with evidence showing that the scaffold was constructed precisely as the plaintiff's experts testified it should have been in order to make it secure and a proper place for the performance of the work. It will thus be seen that the parties agreed as to what should have been done by the defendant, and disagreed as to what was done by him. If, therefore, the plaintiff's evidence on this point was believed it established the charge of negligence, and if the defendant's evidence was credited there should have been a verdict in his favor. It was not possible to reconcile the con-

flicting testimony.   Assuming that the plaintiff's evidence was believed by the jury, and that the defendant's evidence was not, the next question for us to consider is whether the plaintiff was chargeable with contributory negligence.   It seems to be conceded that his fall was attributable to the defective condition of the scaffold.   He says that this condition was the result of the defendant's negligence in the construction of the scaffold, and the defendant says it was caused by a change or alteration of the scaffold by Krimmel.   Did the plaintiff go upon the scaffold on Monday with knowledge of its condition?   It is contended by the defendant that if he did so he was chargeable with negligence fatal to his suit.   In connection with this contention we must consider the evidence affecting it.   The plaintiff had been employed four summers in such work as he was engaged in at the time of his fall.   He noticed on Saturday, and again on Monday, that there was no upright inside the window, and he knew that in this respect, at least, the construction of the scaffold differed from the construction of the scaffolds on which he had formerly worked.   He also knew that the object of such an upright was to strengthen the scaffold and hold down the heel of it to prevent it from tilting.   His fellow workman and witness, Krimmel, testified that there was nothing inside the window to support the ledger boards, and no upright underneath them to the ground; that on Saturday while he and the plaintiff were upon the scaffold " it appeared loose " and " rocked up and down," and that on leaving it, at noon, he complained to the defendant of the condition of it.   Broadbent, the plaintiff's witness, testifed, that the scaffold wobbled on Saturday when the plaintiff and Krimmel were upon it.

The plaintiff also testified that he heard Krimmel complain to the defendant on Saturday that the scaffold was not " in the way it should be ; that there was something loose ; it might cause an accident," and the defendant replied that he was very sorry.   This was all he heard the defendant say in regard to the complaint made by Krimmel, and the latter never claimed to him, until after his fall, that the defendant promised to repair the scaffold, or said that it should be attended to.   It is plain therefore that the plaintiff was not induced to go upon the scaffold Monday morning by anything said to him or in his presence by the defendant or by Krimmel, his fellow workman.

He testified distinctly that he noticed before going upon it on Monday that there had been no change in its condition since he left it Saturday noon.  He must therefore, upon his own showing, be regarded as having voluntarily resumed work upon it on Monday with knowledge that it was improperly constructed and unsafe.  There was an obvious risk in working upon the scaffold, as the plaintiff described it.  " When an employee after having the opportunity of becoming acquainted with the risks of his situation, accepts them, he cannot complain if subsequently injured by such exposure.  By contracting for the performance of hazardous duties, he assumes such risks as are incident to their discharge from causes open and obvious, the dangerous character of which causes he has had opportunity to ascertain : " Brossman v. Railroad Co., 113 Pa. 490 ; Bemisch v. Roberts, 143 Pa. 1.  If it be conceded that the scaffold, by reason of the negligence of the defendant in constructing it, was insecure and dangerous, the negligence of the plaintiff in going upon it with the knowledge and under the circumstances disclosed by the case as presented by him must, on well settled principles, defeat this action.  We therefore sustain the third specification of error.

Judgment reversed.

